# Matter of Sothon SONG, Respondent

*Decided November 19, 2018*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An applicant for adjustment of status who was admitted on a K-1 visa, fulfilled the terms of the visa by marrying the petitioner, and was later divorced must submit an affidavit of support from the petitioner to establish that he or she is not inadmissible as a public charge under section 212(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(4) (2012).

FOR RESPONDENT: Eli A. Echols, Esquire, Duluth, Georgia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Hilary Rainone, Assistant Chief Counsel

BEFORE: Board Panel: GREER and WENDTLAND, Board Members; DONOVAN, Temporary Board Member

WENDTLAND, Board Member:

In a decision dated July 7, 2017, an Immigration Judge found the respondent removable under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B) (2012), as a nonimmigrant who remained in the United States longer than permitted, denied her application for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2012), and ordered her removed. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Cambodia who entered the United States on a K-1 nonimmigrant fiancée visa on November 25, 2011, and married her United States citizen fiancé, the visa petitioner, within 90 days. On February 3, 2012, the respondent filed an application for adjustment of status with the U.S. Citizenship and Immigration Services ("USCIS"), along with a Form I-864 (Affidavit of Support Under Section 213A of the INA) executed by the petitioner. While the application was pending, the marriage broke down, and on July 10, 2012, the petitioner wrote to the USCIS to withdraw his affidavit of support. On November 21, 2012, the USCIS denied the respondent's adjustment application, finding that she

was inadmissible under section 212(a)(4) of the Act, 8 U.S.C. § 1182(a)(4) (2012), as an alien who is likely to become a public charge. The couple divorced on December 20, 2012. The Department of Homeland Security ("DHS") subsequently initiated removal proceedings.

Before the Immigration Judge, the respondent renewed her application for adjustment of status and submitted a new affidavit of support from a family friend. Although the Immigration Judge found that the respondent's divorce did not render her ineligible for adjustment of status, she was required to provide an affidavit of support from the petitioner, her former husband, to establish that she was admissible to the United States. Because the respondent could not do so, the Immigration Judge concluded that she was inadmissible as an alien who is likely to become a public charge and denied her adjustment application.

## II. ISSUE

The issue before us is whether an applicant for adjustment of status who was admitted on a valid K-1 nonimmigrant visa, fulfilled the terms of the visa by marrying the petitioner, and was later divorced must submit an affidavit of support from the petitioner to establish that he or she is not inadmissible as a public charge.

## III. ANALYSIS

"The fiancé(e) visa petition and adjustment processes are hybrid in the sense that they combine both immigrant and nonimmigrant visa attributes . . . ." *Matter of Le*, 25 I&N Dec. 541, 544 (BIA 2011). We have therefore held that "fiancé(e) visa holders remain similarly situated to immediate relatives in satisfaction of the section 245(a) immigrant visa requirements." *Matter of Sesay*, 25 I&N Dec. 431, 439 (BIA 2011). Under section 245(a) of the Act, an alien may be admitted for lawful permanent residence if, among other things, he or she is admissible. An alien is inadmissible under section 212(a)(4)(A) if, "in the opinion of the Attorney General at the time of application for admission or adjustment of status, [the alien] is likely at any time to become a public charge."

Section 212(a)(4)(B)(i)(IV) of the Act states that in determining whether an alien is inadmissible as a public charge, "the Attorney General *shall* at a minimum consider" various factors, including the alien's "assets, resources, and financial status." (Emphasis added.) But according to section 212(a)(4)(B)(ii), "the Attorney General *may* also consider any affidavit of support." (Emphasis added.) However, under section 212(a)(4)(C)(ii) of the Act, aliens with immediate relative status or family-based preference

classification are inadmissible unless "the person petitioning for the alien's admission . . . has executed an affidavit of support . . . with respect to such alien." Although fiancé(e) visa holders differ in certain respects from aliens in those categories, *see Matter of Sesay*, 25 I&N Dec. at 439–40, the governing regulation at 8 C.F.R. § 213a.2(b) (2018) explicitly makes them subject to the same statutory requirement. That regulation provides:

> *Affidavit of support sponsors.* The following individuals must execute an affidavit of support on behalf of the intending immigrant in order for the intending immigrant to be found admissible on public charge grounds:
> (1) *For immediate relatives and family-based immigrants.* The *person who filed* a relative, orphan or *fiancé(e) petition*, the approval of which forms the basis of the intending immigrant's eligibility to apply for an immigrant visa or adjustment of status as an immediate relative or a family-based immigrant, *must execute a* [sic] *an affidavit of support on behalf of the intending immigrant.* If the intending immigrant is the beneficiary of more than one approved immigrant visa petition, it is the person who filed the petition that is actually the basis for the intending immigrant's eligibility to apply for an immigrant visa or adjustment of status who must file the an [sic] affidavit of support.

(Emphases added.)

The respondent argues that, as a matter of policy, it is unreasonable for Congress to require a fiancé(e) visa holder who complied with the terms of the visa but was later divorced to provide an affidavit of support only from the petitioner. This assertion is inconsistent with the plain language of the statute and regulations. We find further support for our conclusion in the history and context of the provisions regarding affidavits of support.

For well over 100 years, our immigration laws have included a ground of inadmissibility for persons who are likely to become a public charge. *See* 84 Interpreter Releases, No. 47, Dec. 10, 2007, at 2849, 2850 & n.3. However, the concept of a legally binding affidavit of support was only introduced in 1996 and implemented on December 19, 1997. *Id.* at 2851; *see also* Affidavits of Support on Behalf of Immigrants, 62 Fed. Reg. 54,346 (Oct. 20, 1997) (interim rule implementing section 213A of the Act, 8 U.S.C. § 1183a (Supp. II 1996)).

Subsequently, the DHS clarified that although the sponsor of a fiancé(e) or other alien relative is under no legal obligation to file a visa petition or sign an affidavit of support, if a sponsor chooses to facilitate the immigration of such a relative, he or she must comply with the legal requirements for doing so. *See* Affidavits of Support on Behalf of Immigrants, 71 Fed. Reg. 35,732, 35,744 (June 21, 2006) (final rule) (Supplementary Information). These requirements include the submission of an affidavit of support. *See* 8 C.F.R. § 213a.2(b)(1); *see also* Memorandum from Michael Aytes, Acting Dir., Domestic Operations, to USCIS officials 3 (June 27, 2006),

https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2006/affsuppafm062706.pdf ("Aytes Memorandum"). Further, to successfully complete the process, the affidavit of support must be valid at the time of filing *and* at the time the adjustment application is adjudicated. *See* Aytes Memorandum, *supra*, at 1, 13; *see also* 8 C.F.R. § 213a.2(e).

An affidavit of support is a legally binding contract. *See* 8 C.F.R. § 213a.2(d). The sponsor assumes the obligation of support when the beneficiary acquires permanent resident status, and that obligation continues until one of four scenarios has occurred: (1) the alien naturalizes; (2) the alien has "acquired 40 quarters of coverage under the Social Security Act" (that is, he or she has been lawfully employed for approximately 10 years); (3) the alien leaves the United States permanently, abandoning his or her permanent resident status; or (4) the alien or the sponsor dies. 71 Fed. Reg. at 35,740; *see also* sections 213A(a)(2), (3) of the Act.

The commentary to the regulation also addresses the situation where the alien and the sponsor divorce.

> Section 213A of the Act does not provide any basis to say that divorce does, or does not, affect a support obligation under an affidavit of support. [The] sponsored immigrant . . . probably can, in a divorce settlement, surrender his or her right to sue the sponsor to enforce an affidavit of support. The sponsored immigrant and the sponsor . . . may not, however, alter the sponsor's obligations to DHS and to benefit-granting agencies.

71 Fed. Reg. at 35,740. This lends support to the understanding that Congress intended the affidavit of support to be a legally binding commitment, unaltered by the circumstance of divorce. *See* Form I-864 Instructions (Instructions for Affidavit of Support Under Section 213A of the INA), at 13 ("Divorce does not end the sponsorship obligation.").

Whether because of a divorce or some other circumstance, the sponsor may withdraw an affidavit of support for the alien at any time up to adjudication of the adjustment application. *See* 8 C.F.R. § 213a.2(f); Aytes Memorandum, *supra*, at 13. However, it is by no means a foregone conclusion that a sponsor will withdraw his or her affidavit of support for a spouse upon their divorce. Conceivably, just as the alien could surrender the right to sue the sponsor to enforce the affidavit of support as part of the divorce settlement, the sponsor might agree not to withdraw the affidavit. That possibility supports our conclusion that the plain language of the statute and regulations does not permit an exception to the affidavit of support requirements in the event of divorce and that none should be implied.

Moreover, the law allows two explicit exceptions to the affidavit of support requirement: abuse and death. *See* USCIS, *Affidavit of Support*,

www.uscis.gov/greencard/affidavit-support (follow *When NOT to Submit an Affidavit of Support*) (last updated June 26, 2017). First, an alien who is or was married to an abusive spouse is not required to provide an affidavit of support from that petitioner. Sections 204(a)(1)(A)(iii), (iv) of the Act, 8 U.S.C. §§ 1154(a)(1)(A)(iii), (iv) (2012); 8 C.F.R. §§ 204.1(a)(3), 204.2(c) (2018). Second, in cases where the petitioner has died prior to adjudication of the adjustment application, the alien is permitted to substitute the petitioner's affidavit of support with one from another qualifying relative. Section 213A(f)(5)(B)(i) of the Act.

These two exceptions highlight the absence of any others. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (citation omitted)). Congress could have made an exception for the divorce of a K-1 visa holder and the sponsoring petitioner, but it did not. Instead, by requiring that "the person petitioning for the alien's admission" must be the individual who executes an affidavit of support, Congress clearly indicated its intent that the sponsor who brought the alien to the United States must be financially responsible for the alien through the period of his or her adjustment of status. Section 212(a)(4)(C)(ii) of the Act; *see also* 8 C.F.R. § 213a.2(b)(1) (stating that the person who filed the petition upon which the alien's adjustment is based must file the affidavit of support).

The respondent argues that we should follow our reasoning in *Matter of Sesay*, 25 I&N Dec. at 440–41, where we concluded that the K-1 visa holder could adjust his status despite his divorce from the petitioner if he was otherwise admissible. However, as we noted there, the regulations were silent regarding the consequences of the termination of a valid marriage. *Id.* at 439. By contrast, 8 C.F.R. § 213a.2(b)(1) affirmatively states that a fiancé(e) petitioner must be the person who files an affidavit of support on behalf of the K-1 visa holder. Further, the K-1 visa holder is inadmissible as a public charge if the petitioner declines to submit an affidavit of support or withdraws it before the alien's adjustment application has been adjudicated. *See* section 212(a)(4)(C)(ii) of the Act; 8 C.F.R. § 213a.2(f). Because the language of both the statute and the regulations is plain and unambiguous, we are bound to follow it. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Matter of Figueroa*, 25 I&N Dec. 596, 598 (BIA 2011).

In this case, the respondent's former husband, her petitioning sponsor, wrote to the USCIS and requested that his affidavit of support for her be withdrawn prior to adjudication of her application for adjustment of status. Although the respondent may still adjust her status, she is inadmissible on grounds that she is likely to become a public charge unless she provides

an affidavit of support from the petitioner. *See* section 212(a)(4)(C)(ii) of the Act; 8 C.F.R. § 213a.2(b)(1); *see also Matter of Sesay*, 25 I&N Dec. at 440–41. Because the respondent acknowledged that she no longer has an affidavit of support from her former husband, the Immigration Judge properly found her to be inadmissible and therefore ineligible for adjustment of status. Accordingly, because the respondent conceded removability and has presented no other applications for relief, her appeal will be dismissed.

**ORDER:** The appeal is dismissed.